```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SOUTHERN TELECOM INC.,                                            :
                                                                  :
                                    Plaintiff,                    :
                                                                  :           20-cv-2151 (LJL)
              -v-                                                 :
                                                                  :           OPINION & ORDER
THREESIXTY BRANDS GROUP, LLC,                                     :
                                                                  :
                                    Defendant.                    :
                                                                  :
------------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiff Southern Telecom, Inc. ("STI") moves, pursuant to Federal Rule of Civil Procedure 15(a), for leave to file a second amended complaint against Defendant ThreeSixty Brands Group, LLC ("ThreeSixty"). For the following reasons, the motion to amend is denied.

## BACKGROUND

### A.   General Factual Background

The Court assumes familiarity with its January 12, 2021 Opinion, and adopts the terms defined therein. Dkt. No. 70. This case involves a licensing dispute. Plaintiff STI is a manufacturer of consumer electronics and accessories. Defendant ThreeSixty is the current owner of the brand and trademarks THE SHARPER IMAGE and SHARPER IMAGE (the "Marks"). Pursuant to a licensing agreement (the "Agreement") originally signed in 2008 and amended as recently as 2016, ThreeSixty's predecessor-in-interest granted STI a non-exclusive license to manufacture and sell products under the Marks that were approved by the Licensor in its sole discretion to an identified set of retail outlets as well as to other outlets as determined by the Licensor in its discretion.

At the time, the predecessor signed the Agreement, it was not itself in the business of

manufacturing consumer electronics or accessories. However, shortly after STI signed the most recent amendment to the Agreement in 2016, ThreeSixty's predecessor agreed to sell the Marks to a consumer electronics manufacturer, MerchSource, LLC ("MerchSource") who also had enjoyed license rights to the Marks. MerchSource created ThreeSixty as an acquisition vehicle for the Marks, and ThreeSixty acquired the Marks in 2016. ThreeSixty is alleged to have no practical existence separate from MerchSource and to have no business apart other than owning the Marks and other intellectual property assets.

According to Plaintiff, after acquiring the Marks, ThreeSixty took a series of actions favoring MerchSource and disadvantaging STI. It delayed and then denied STI's product submissions, allegedly based solely on STI's identity. It took the ideas reflected in the product submissions from STI that it did not approve and permitted MerchSource to manufacture and sell products identical to the ones it had disapproved when STI submitted them. It ceased to permit STI to sell to retail outlets other than those STI had a prior contractual right to sell to, and it permitted MerchSource to sell its products to those outlets. Finally, STI claims, ThreeSixty unreasonably refused to extend STI's contractual rights to sell products bearing the Marks in the period after STI terminated the Agreement, thus holding STI to its contractual obligation to sell any remaining products in the 120 days after termination of the agreement and refusing to permit STI to sell THE SHARPER IMAGE branded products beyond that date, notwithstanding the COVID-19 pandemic.

STI claimed that ThreeSixty's conduct breached the covenant of good faith and fair dealing implied by New York courts in every contract governed by New York law.

B.     **The Court's January 12, 2021 Opinion**

On September 4, 2020, ThreeSixty moved for judgment on the pleadings as to all of the allegations in the complaint. Dkt. No. 26. ThreeSixty relied primarily on the language in the

Agreement stating that "Licensor's approvals pursuant to this Agreement . . . may be withheld in Licensor's sole discretion."  Dkt. No. 31 § 6.1.  It also relied on language with respect to the product approval process to the effect that Licensor would have "sole and absolute discretion[] over all Products and all materials throughout the . . . three (3) stages of development and production."  *Id*. § 3.2(a).  ThreeSixty argued that such language relieved it of any obligation to exercise good faith with respect either to product approvals or as to the customers to whom STI could sell and that, as a result, ThreeSixty could make these decisions for arbitrary reasons or no reason at all, without being second-guessed in a court of law.

By Opinion and Order of January 12, 2021 and corrected on February 17, 2021, the Court granted in part and denied in part ThreeSixty's motion.  Dkt. Nos. 58, 70.  The Court first held that Plaintiff's allegations that ThreeSixty denied its requests to sell to retail outlets while permitting MerchSource to sell to those same retail outlets failed to state a claim for relief.  Dkt. No. 70 at 21-26.  Section 6.1 of the Agreement gave ThreeSixty "sole discretion" with respect to all approvals pursuant to the Agreement without qualification or limitation.  Dkt. No. 31 § 6.1.  It applied to approvals pursuant to Section 5.1 with respect to retail outlet approvals no less than it applied to any other provision of the Agreement requiring approval by ThreeSixty for conduct by STI.  *Id.*  The Agreement did not give STI the right to sell to any retail outlet STI wanted and specifically contemplated that ThreeSixty would be able to license the Marks to other manufacturers—the license granted to STI was "non-exclusive," and thus ThreeSixty might grant licenses to other manufacturers to sell to retail outlets exclusively and not in competition with STI.  Indeed, the complaint cited with apparent approval the practice of ThreeSixty's predecessor to enforce market separation between STI and MerchSource, permitting STI to sell exclusively to certain retail outlets and MerchSource to sell to others exclusively.  Dkt. No. 21 ¶ 15.  The

implication of a duty to act in good faith was not necessary to assure STI the benefit of its bargain and to prevent the Agreement from being illusory. STI was secured the benefit of the bargain by the Appendix to the Agreement, which identified retail outlets that were pre-approved and that STI would be able to sell to without any need for further consent by ThreeSixty.

The Court, however, also denied the motion for judgment on the pleadings in part. The Court denied the motion to the extent that Plaintiff's allegations could be read to claim that ThreeSixty had adopted a practice of denying STI's applications for product approvals based solely on STI's identity and not for any reason related to the applications themselves and then misappropriating for itself STI's product ideas and providing them to MerchSource. Dkt. No. 70 at 9-21. The Court reasoned that to read the Agreement to permit ThreeSixty to deny a product approval simply because the application was made by STI without reviewing the application itself would render ThreeSixty's obligations under the Agreement entirely illusory, permitting it to take Plaintiff's advance but giving STI no way to earn that advance back by being able to sell THE SHARPER IMAGE products. *Id*. at 18-19. In addition, an interpretation of the phrase "sole discretion" to permit ThreeSixty absolute discretion to reject STI's product applications for any reason, at any stage, and based on any process would effectively read out of the licensing agreement the detailed provisions for product approvals also set forth in Section 3.2—in violation of the cardinal principle that the Court must give meaning to each word in any agreement where possible. The nub of the Court's holding appears at pages 17-18 of the corrected opinion:

> The foregoing analysis demonstrates that STI has stated a claim that ThreeSixty violated the covenant of good faith and fair dealing in connection with ThreeSixty's refusal to approve STI's products. Accepting the allegations of the Complaint as true, ThreeSixty's conduct deprived STI of the fruits of its agreement and would render its contractual promises illusory. STI paid good and valuable consideration to ThreeSixty in exchange for the opportunity to sell goods with the marks. It paid

4

>a minimum royalty amount and agreed to pay royalties on its sales in an amount between 3-6%. It did so in exchange for something real form ThreeSixty—the opportunity to submit product ideas to ThreeSixty and, if ThreeSixty agreed with them and wanted the products to be manufactured, the opportunity to earn back the minimum royalty amount and make additional profits through sales of those products at least to the approved retail outlets and, if ThreeSixty agreed, to additional retail outlets.
>
>The allegations of the Complaint make out a case that ThreeSixty deprived STI of the benefit of its bargain and "engage[d] in conduct that . . . deprive[d] the other party of the benefit of their agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980). After ThreeSixty acquired the Marks and combined with MerchSource, ThreeSixty continued to accept product submissions from STI but ceased to view those product submissions for their contents. Rather, it looked at them only for the identity of the company making the submission and—when it saw the submissions came from STI—denied them solely on that basis and without looking at the content, except—STI alleges—to appropriate for itself STI's product ideas and provide them to MerchSource. It thereby extracted value from STI in the form of the minimum royalty and its product ideas without giving STI any opportunity to earn back the royalty and depriving STI of the returns on its investment in the product ideas. ThreeSixty was bound by the contract to conduct a good faith application process and to perform a good faith review of STI's submissions and retail applications. Simply to refuse to consider STI's submissions because they came from STI was a violation of the duty of good faith.

Dkt. No. 70 at 17-18. The Court concluded that: "What [ThreeSixty] cannot do . . . for example, is to ignore the application and take the identical product manufactured to the identical standards and sold to the identical retail outlets and say it approves the product because it is sold by MerchSource and not approve it because it is sold by STI." *Id*. at 21.

After the Court issued its opinion, STI filed a motion for reconsideration on January 26, 2021. Dkt. No. 59. STI requested that the Court reconsider its dismissal of STI's claim regarding retailer approvals. *Id*. at 1. STI pointed out that the Court had written in its opinion that Section 5.1 of the Agreement stated that ThreeSixty had "sole discretion" over whether to approve retailers, when in fact Section 5.1 did not contain such a provision. *Id*.

The Court denied STI's motion for reconsideration. Dkt. No. 69. The Court held that STI had identified only a scrivener's error in the opinion. *Id.* at 2. The language of "sole

5

discretion" that the Court relied upon was found in Section 6.1, rather than Section 5.1, and applied to Retailer Approvals under Section 5.1. Thus, the Court found that there was no error in its analysis warranting reconsideration. The Court issued a corrected opinion adding a close quotation and a correct additional citation. Dkt. No. 70.

### C. The Proposed Amended Complaint

Plaintiff made this motion to amend the complaint on January 29, 2021. Dkt. Nos. 61, 62. The proposed amended complaint, Dkt. No. 63-1, adds several new allegations:

- The allegation that ThreeSixty and MerchSource executives "instructed ThreeSixty's Chief Merchandising Officer for the SHARPER IMAGE brand to develop a line of competitive products to displace STI, while at the same time rejecting STI's Product submissions to clear the way for MerchSource's development and sale of competing products. Because ThreeSixty's Chief Merchandising Officer, who was tasked with reviewing and approving each of STI's product submissions—the designs, schematics, features and functionality—was also in charge of, and intimately involved in, the design and development of competitive MerchSource products, he was able to deny STI's Product submissions on a pretextual basis." *Id.* ¶ 20.

- The claim that MerchSource used STI's designs and other information from Product submissions to develop Products including massagers, speakers, headphones, lighting and multiple other products directly copied from SHARPER IMAGE products developed and sold by STI. *Id.* ¶ 21.

- The allegation that ThreeSixty shared with MerchSource "STI's confidential financial, sales and pricing information to enable MerchSource to make decisions about (i) which products to make and sell; (ii) where to sell them; and (iii) how to price them." *Id.* ¶ 22.

- The deletion of the allegation that ThreeSixty violated the duty of good faith and fair dealing by not extending the "Sell-Off Period." *Id.* ¶¶ 26-30.

## DISCUSSION

Federal Rule of Civil Procedure 15 provides that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). On a motion to amend, the court must accept the allegations of the complaint as true. A court may deny amendment on grounds of futility only when the revised claim "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.

6

2002). "In assessing whether the proposed complaint states a claim, we consider the proposed amendment[s] . . . along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (internal citations and quotation marks omitted); *see Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.") (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).

Moreover, where, as here, a scheduling order is in place, the Court will permit an out-of-time amendment only upon a showing of "good cause." *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 353 (S.D.N.Y. 2020); Fed R. Civ. P. 16(b)(4); *see also Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'") (quoting Fed. R. Civ. P. 16(b)).

The motion to amend is denied for two independent reasons. First, the substantive allegations are futile. Second, Plaintiff has unduly delayed in proposing the amendment and Defendant would suffer undue prejudice if the amendment were permitted.

    **A.**    **The Allegations are Futile**

Plaintiff's proposed amendment presents two alternative theories of liability for breach of the duty of good faith and fair dealing: (1) misappropriation and utilization of confidential information; and (2) misappropriation of product ideas for approved products. Each is futile.

### 1.   Misappropriation of Confidential Information

Plaintiff's proposed second amended complaint adds an allegation that ThreeSixty shared with MerchSource "STI's confidential financial, sales and pricing information to enable MerchSource to make decisions about (i) which products to make and sell; (ii) where to sell them; and (iii) how to price them." Dkt. No. 63-1 ¶ 22. ThreeSixty argues that the allegations charging misappropriation of confidential information should not be permitted on the grounds that they are futile. Dkt. No. 66 at 10-17. It argues that the allegations fail to state a claim for three independent reasons: (1) STI has failed to plead any facts supporting the allegation that this information was, in fact, confidential; (2) the Agreement expressly provides that at least the product design information is solely and exclusively owned by ThreeSixty; and (3) implication of a duty of good faith and fair dealing would frustrate the express provisions of the Agreement. *Id.*

The proposed new allegations fail to state a claim for breach of the duty of good faith and fair dealing and an amendment would be futile for those reasons. As the Court held in its earlier opinion, the covenant of good faith and fair dealing is not a code of good conduct, *see Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182-83 (Del. Ch. 2014) ("[T]he covenant does not establish a free-floating requirement that a party act in some morally commendable sense[,] . . . [n]or does satisfying the implied covenant necessarily require that a party have acted in subjective good faith."), nor does it protect against a contractual counterparty taking advantage of language in an agreement to further its own independent interests, *see* Dkt. No. 70 at 24 (citing, *e.g.*, *Barcara v. MarineMax, Inc.*, 2013 WL 1952308, at *5 (S.D.N.Y. May 10, 2013) ("In general, a party does not violate the covenant of good faith and fair dealing solely 'by acting in its own self-interest consistent with its rights under the contract.'") (internal citations omitted)). "[T]he implied obligation is in aid and furtherance of other terms of the agreement of

the parties," *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983), and operates to preserve the meaning and substance of contractual obligations by ensuring that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004). It follows that the covenant cannot be used to create new contractual obligations beyond those to which the parties have agreed, *Nat'l Gera & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 364 (S.D.N.Y. 2012); *In re Musicland Holding Corp.*, 386 B.R. 428, 438 (S.D.N.Y. 2008), *aff'd*, 318 F. App'x 36 (2d Cir. 2009), and "[n]o obligation can be implied . . . which would be inconsistent with other terms of the agreement of the parties," *Murphy*, 448 N.E.2d at 91.

The Agreement specifically addressed the confidentiality of information. It is not necessary to read into it an obligation to act in good faith or for ThreeSixty not to share or use STI's information to make the agreement meaningful. The implication of such a term would impose a new, significant contractual restraint on ThreeSixty for which STI did not bargain and which would be inconsistent with the other terms of the Agreement.

Specifically, Section 15.1 of the Agreement explicitly address "Confidentiality." It imposes an obligation on STI, but not on ThreeSixty, to keep confidential "all information relating to the business and operations of [ThreeSixty] and its affiliates that it learns or has learned during or prior to the Term of th[e] Agreement, all creative concepts that [ThreeSixty] provides to it and all sketches and designs received by it from or approved for use [under the Agreement] by [ThreeSixty]." Dkt. No. 31 § 15.1. It also contains the acknowledgment that all such information—including sketches and designs approved by ThreeSixty—are the "valuable property" of ThreeSixty. *Id.* The Agreement also reflects that "[a]ny copyright, design, moral

9

right or similar such right and any other intellectual property right in or that may be created in any Article (or any aspect thereto) or any related materials" that is "approved" by ThreeSixty is the "exclusive property" of ThreeSixty—either by virtue of ThreeSixty's act of design or creation, or by virtue of the "works made for hire" doctrine or by assignment. *Id.* § 14. STI is required to deliver detailed sales reports to ThreeSixty on a quarterly basis, broken down by Article in the Agreement and by country of operations and to submit itself to audit, but the Agreement imposes no obligation on ThreeSixty to keep the information confidential that it obtains through those means. *Id.* §§ 11, 12. STI may not assign its rights under the Agreement but the Agreement imposes no restrictions on ThreeSixty's rights to assign its rights and provides specifically that the Agreement will inure to the benefit of ThreeSixty's successors and assigns. *Id.* § 21.

Clearly, if STI had wanted to obtain from ThreeSixty a reciprocal obligation that ThreeSixty could not share all of STI's confidential information, STI could have negotiated for such a provision.[1] To read such a restriction into the Agreement now, when it does not appear on its face, would be inconsistent with the Agreement's terms and could defeat or undermine the valuable rights for which ThreeSixty bargained—including the rights to use all information regarding "the business and operations" of ThreeSixty (including information about the sales of ThreeSixty branded products) as ThreeSixty wants and the ability to assign ThreeSixty's rights under the Agreement—including the right to receive sales reports and to conduct audits—to whomever ThreeSixty wanted, including to an actual or potential competitor of STI.

Nor is it necessary to read such an obligation to keep STI's information confidential to

---

[1] ThreeSixty, in fact, proffers evidence that STI asked for such a provision in the negotiation of the Agreement and did not receive it. The Court does not rely on that evidence for this point which raises an issue of law.

10

give meaning to the Agreement and each of its provisions. STI's rights, such as they were, were protected by the obligation of ThreeSixty to consider STI's applications for Product Approvals based on their contents and not based on the identity of the submitter and also protected by STI's further right—granted by the Agreement—to sell the approved Products to any of the retail outlets that were preapproved by ThreeSixty as well as to any additional outlets that were subsequently approved by ThreeSixty. STI was not required to submit applications for Product Approvals to ThreeSixty. If it did not want any of the information it developed to be shared with ThreeSixty or by ThreeSixty with any third party, it had a ready option. It could have designed products for other licensors. Aside from the restriction that it would "not 'knock-off' any designs used in the development of [approved] Products in connection with its (or its affiliates) development of any other products (whether 'private label' or 'branded')" and to make any "such other products . . . sufficiently differentiated from Products produced under th[e] Agreement," *id*. § 3.5, there was no other restriction on it doing so. STI was only obligated to share information with ThreeSixty with respect to products using (or that were proposed to use) the Mark ThreeSixty licensed and/or for which ThreeSixy had to pay royalties to STI, i.e., with respect to "transactions relating to th[e] Agreement." *Id*. § 12.1. It had no other obligation to share information.

The cases Plaintiff cites in support of its claim to a breach of the duty of good faith and fair dealing on the basis of confidentiality are inapposite. In *Washington v. Kellwood Co.*, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009), for example, the court dismissed plaintiff's claim of a breach of the duty of good faith and fair dealing. It permitted a contract claim to go forward based on the allegation that defendant misappropriated and exploited plaintiff's confidential information but that was because the contract at issue specifically required the defendant to keep

11

plaintiff's information confidential.  And in *Dorset Industries, Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395 (E.D.N.Y. 2012), the court dismissed a good faith and fair dealing claim based upon the defendant's use of confidential information, where the claim was duplicative of a cause of action for breach of the provisions of the contract.  The cases do not support Plaintiff's position that the duty of good faith and fair dealing can overcome an explicit confidentiality provision in a contract.

### 2.     Misappropriation of Product Ideas

STI's proposal to amend the complaint with new allegations concerning misappropriation of product ideas is also futile.  As noted above, the Court previously sustained Plaintiff's claim that Defendant's alleged conduct in disapproving STI's product submissions for no reason other than STI's identity and then misappropriating the ideas STI presented for use by MerchSource was a breach of the duty of good faith and fair dealing.  It did so because the implication of such a duty was necessary to give the Agreement meaning and to make ThreeSixty's obligations not illusory.  In addition to the reasons set forth in the Court's decision, STI's designs and sketches that were not approved for manufacture by ThreeSixty do not—under the Agreement—become the property of ThreeSixty.  Defendant's broad argument that the use of the words "sole discretion" in the agreement permitted it to reject STI's submissions as a blanket matter and without regard to the contents of its application (except for the name of the submitter) and to take those designs for its own thus reached too far.

That logic, however, and the Court's reasoning, does not extend to ThreeSixty's use of the design information from a product submission that ThreeSixty has approved.  In that instance, where ThreeSixty has given approval, STI does receive consideration for sharing the design with ThreeSixty.  It receives the right to sell the approved Product at least in all of the pre-approved outlets and, at ThreeSixty's discretion, in additional outlets.  It can set its own

prices for the Products "in its sole discretion," Dkt. No. 31 § 1.4, and it need only pay ThreeSixty as a sales royalty a small percentage of its net wholesale sales. As part of the Agreement, ThreeSixty obtains a property interest in any design it has approved and enjoys all intellectual property rights in that design. The Court need not read into the Agreement a right for STI to prohibit ThreeSixty from sharing the intellectual property with MerchSource in order to preserve for STI the "fruits" of the contract. The sales, distributions, and sales royalty provisions already do so without any need for an implied right.

### B. Undue Delay and Prejudice

The Court also denies the motion to amend for the independent and sufficient reasons that Plaintiff has not shown good cause to permit amendment outside the period provided under the case management plan, Plaintiff has engaged in undue delay, and Defendant would suffer undue prejudice from an amendment. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (2008)); *Pristine Jewelers NY, Inc. v. Broner*, 2020 WL 5894077, at *1 (S.D.N.Y. Oct. 5, 2020) ("When a party files a motion to amend after the pleading deadline set forth in the case management plan and scheduling order, Fed. R. Civ. P. 16(b) governs and the party must establish 'good cause' to amend its pleadings.") (quoting Fed. R. Civ. P. 16(b)).

The complaint in this action was originally filed in New York State Supreme Court on February 20, 2020, and the case was removed by Defendant to this Court on March 10, 2020. Dkt. No. 1. The Court's case management plan, entered on June 1, 2020, provided that any motion to amend would be filed by July 1, 2020, all fact discovery would be complete by

13

January 25, 2021, and all discovery would be complete by March 25, 2021. Dkt. No. 17. The Court generally has kept the parties to that schedule. On January 12, 2021, the Court granted in part and denied in part Plaintiff's motion to extend the discovery schedule, extending discovery until February 25, 2021 for the limited purpose of permitting Plaintiff to take four fact depositions it identified, but denying the request in all other respects. On February 19, 2021, the Court granted the parties' request for an extension of the deadline for expert discovery to April 15, 2021 but maintained the deadline for conclusion of fact discovery of January 25, 2021 (except for the four specified depositions). Dkt. No. 75. The Court did not extend the deadline for amendments.

Plaintiff argues that it should be permitted to make this amendment outside of the case management plan deadline and after the completion of substantially all fact discovery because it learned for the first time in documents produced on December 23, 2020 and during depositions of two ThreeSixty witnesses on January 14 and 19, 2021 that ThreeSixty shared what STI claimed to have been its confidential and commercially sensitive information with MerchSource so MerchSource could more effectively compete with STI in the marketplace. *See* Dkt. No. 62 at 4; Dkt. No. 76 4 n.3, 9-10; Dkt. No. 77.

Plaintiff does not argue that there is any newly-discovered evidence that would justify the allegations with respect to product misappropriation, contending instead that the allegation is contained "in the currently operative pleading," Dkt. No. 76 at 4, and that the "recently discovered evidence" relates to the use of STI's confidential and competitively sensitive information supplied under the Agreement, *id.* at 5. Defendant proffered evidence that STI's claim of product misappropriation was not based on any information obtained in discovery but was based on Plaintiff's observation in retail outlets of SHARPER IMAGE products

14

manufactured by MerchSource that Plaintiff believes were based on Plaintiff's own products. But, if Plaintiff learned of the alleged misappropriation through visits to stores, there is no reason it could not have made the amendment within the deadline set by the Court. It admits that it had a regular practice of visiting stores to see what competitors were manufacturing and selling. Dkt. No. 67-4 at 3. Based on Plaintiff's concession alone, there is no good cause and there was undue delay in asserting the theory based on product misappropriation. *See Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) ("A district court 'may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.'") (quoting *N.H. Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009)).

Moreover, as to the confidential information theory, it was no secret to STI that MerchSource was receiving what STI now claims to be its confidential information. The evidence on this motion demonstrates that STI knew, starting in 2017 and after ThreeSixty (affiliated with MerchSource) acquired ownership of the brands, that its information was going to MerchSource. It sent MerchSource its financial, sales, and pricing information in the form of quarterly royalty reports. Each of those quarterly reports is addressed by STI to, among others, a person at MerchSource as demonstrated by the email address. Dkt. Nos. 67, 67-1, 67-2, 67-3. Plaintiff does not dispute that it sent its information to MerchSource; nor does it claim that it put any restriction on that information when it sent it to MerchSource. Rather, it claims that it has only recently discovered that MerchSource used the information to give it "an invaluable leg-up in the marketplace" and to "undercut STI in the marketplace." Dkt. No. 76 at 3. That hardly could have been news in February 2020 when the original complaint was filed—the thrust of the complaint is that ThreeSixty's combination with MerchSource gives MerchSource a leg up in the

15

marketplace against STI and unfairly discriminates against STI. As importantly, however, Plaintiff does not identify any information about MerchSource's use of its information that it learned after the deadline for amendments that it did not know before that deadline.[2]

Plaintiff's delay undermines this Court's schedule and would cause undue prejudice for Defendant. As noted, discovery is now closed and was on the eve of closing at the time of the proposed amendment. Were the Court to permit the amendment, it also would permit ThreeSixty discovery into the alleged confidentiality of the information STI shared with ThreeSixty. Dkt. No. 66 at 17. It hardly would be fair or consistent with the Federal Rules of Civil Procedure to deny ThreeSixty the discovery it reasonably needs to defend itself. The Court also would be required to permit ThreeSixty extensive discovery into STI's claims of product misappropriation. STI has identified six products which it alleged MerchSource copied after ThreeSixty refused STI's request for product approval. Dkt. No. 67 ¶ 7. ThreeSixty represents that STI submitted hundreds of products for approval. Regardless of the number, if the Court were to permit STI to add these allegations to the complaint, it would in fairness need to permit ThreeSixty to take discovery on STI's intellectual property rights, if any, regarding STI products and the availability of similar designed products in the market during the same time.[3]

---

[2] STI cites to paragraph 21 of the proposed amended complaint regarding the new information it claims it did not learn until January 2021. Even if the Court assumes that STI means to refer to paragraph 22, which relates to the sharing of information, that paragraph simply states that information provided by STI was shared within MerchSource, including with the executive involved in product development and who interfaced with retail outlets and, in general terms, that MerchSource began making product development decisions based on the success of STI's products. It does not identity any newly-discovered evidence that was not reasonably available to STI prior to the date for making amendments.

[3] STI claims that such information is in ThreeSixty's possession and thus no new discovery would be necessary. But, in defending against a case alleging product infringement, ThreeSixty would not be limited to relying on information only in its possession. The Court would need to allow it discovery into information in STI's possession as well as in the possession of third parties.

### C.     The Sell-Off Period

Finally, Plaintiff seeks to amend the complaint to remove a claim regarding the Sell-Off Period that the Court already has dismissed.  Defendant opposes the motion on the theory that the claim already has been dismissed and so no amendment is necessary.  It also expresses the fear that if the Court were to permit the amendment—and thus to permit Plaintiff voluntarily to remove the allegations—STI would be able to use the amendment to argue that it did not owe ThreeSixty's attorneys' fees under the provision of the Agreement requiring prevailing party fees.  Dkt. No. 66 at 21.

Even though Plaintiff seeks to remove an allegation, it still must show good cause since the time period for amendment has passed.  Plaintiff has not shown good cause nor has it shown that amendment is necessary.  The parties agree that the issue identified in the paragraphs Plaintiff seeks to strike is no longer part of the case.  If the case goes forward to trial, the Court will not instruct the jury on this issue.

## CONCLUSION

For the foregoing reasons, the motion to amend is DENIED.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 61.

SO ORDERED.

Dated: March 16, 2021
       New York, New York                             LEWIS J. LIMAN
                                                      United States District Judge